ALICE D. TILTON, IN EQUITY, vs. EDITH B. DAVIDSON.        |  98    55|
                                                          | 101   390|

Hancock.   Opinion July 2, 1903.

*Will.    Trust.    Termination.    Pleading.*

Although a trust may not have ceased by expiration of time, and although all its purposes may not have been accomplished, yet if all the parties who are or may be interested in the trust property are in existence, and sui juris, and if they all consent and agree thereto, a court in equity may decree the determination of a trust and the distribution of the trust fund among those entitled.

When the purposes named in the trust which are inconsistent with the full beneficial ownership and control of the cestui are fulfilled, so that the trustee holds the property on a simple trust, the cestui having the absolute ownership of the fund, he is entitled to have the trust terminated.

A testator devised all his estate to his two daughters who were his only heirs and by a codicil appointed them as trustees under the will with powers of investment and to pay over to themselves in equal portions all the income of the principal, and to dispose, by will or otherwise, their portion of the principal after their death. Upon a bill of interpleader to obtain a construction of the will, *held;* that it did not create a spendthrift trust; and upon amendment to the prayer of the bill the alleged trust may be terminated.

Such bill should distinctly allege that the two daughters are the only heirs of the testator.

On report. Bill sustained. Decree according to the opinion.

Bill to obtain the construction of the will of Herman Elvas Davidson, late of Bar Harbor, deceased. The defendant, one of the two only heirs, answered and joined with the plaintiff in requesting its construction.

*H. E. Hamlin,* for plaintiff.

*J. A. Peters, Jr.,* for defendant.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

WHITEHOUSE, J.   This is a bill in equity brought to obtain a judicial construction of the will of Herman Elvas Davidson, late of Bar Harbor in the State of Maine.

On the eleventh day of June, 1890, the testator made his last will and testament, the disposing items of which were of the following tenor, viz: "I bequeath and devise as follows: 1. To my two daughters, Alice Bowker Davidson, and Edith Bowker Davidson, share and share alike, all the property real and personal of which I may die possessed, or which may be paid to my estate after my decease. And in case either of my said daughters should die before me, leaving no issue, then I give and bequeath all the property named in this article of my will to the other of my daughters surviving me; but if she is also deceased then to her issue surviving me. 2. I hereby designate and appoint my two daughters aforesaid Executors and Administrators of this my last Will and Testament; and I desire that they be not required to give bonds."

On the fourth day of August of the same year, he executed the following codicil to his will: "By this codicil to my last Will and Testament, dated in June 1890, made this fourth day of August, eighteen hundred and ninety, I hereby appoint my two daughters, Alice Bowker Davidson and Edith Bowker Davidson, trustees of my estate, which I bequeath to them. I hereby bequeath all my estate both real and personal to my aforesaid Trustees, the same to remain in their care during their lifetime, with power to keep or change any of the investments as they may deem fit and to pay over to themselves in equal portions, all the income of said principal, and to dispose, by will or otherwise, their portion of said principal after their death.

"And I hereby order that the above named Trustees shall not be required to give any bonds for their fulfillment of the within trust."

The testator died on the tenth day of the same month, and the foregoing will and codicil were duly admitted to probate in the County of Hancock. The plaintiff and defendant are the testator's daughters named in the will and codicil, and it is alleged in the plaintiff's bill and admitted in the answer that they "are the only living persons interested, or who by possibility may be interested in the subject matter of this bill." The plaintiff asks the court to determine what interest in the testator's estate the plaintiff and the defendant each respectively acquired by virtue of this will and codicil, and whether or not each is entitled to one-half of the estate, "absolutely

in her own right and free from any trust." The defendant admits. the allegations in the bill and joins in the prayer for the construction of the will according to the prayer of the bill. The case is thereupon reported to this court on bill and answer, the defendant submitting without argument.

It is a familiar rule of law that where the legal and equitable estate in the same land becomes vested in the same person, the equitable will merge in the legal estate, if the latter is equally extensive with the former; "for a man cannot be a trustee for himself nor hold the fee, which embraces the whole estate and at the same time hold the several parts separated from the whole." "No person can be both trustee and cestui que trust at the same time, for no person can sue a subpoena against himself." 1 Perry on Trusts, §§ 13 & 347. See also 2 Pom. Eq. § 988; *Wills* v. *Cooper*, 1 Dutcher, 25 N. J. 137; *Bolles* v. *State Trust Co.*, 27 N. J. Eq. 308; *Mason* v. *Mason's Ex'rs*, 2 Sandf. Ch. 433. But in equity this is not an inflexible or universal rule, and it will not be applied contrary to justice or the intention of the parties, but the two estates may be kept separate and a trust allowed to subsist, if necessary to protect the equitable interest of the owner.

In the case at bar it has been seen from the terms of the codicil that the testator resorted to this legal solecism of constituting his daughters trustees for themselves, for the apparent purpose of limiting their enjoyment of the estate to the use of the income during their lifetime, and of preventing any alienation of the principal except by "will or otherwise" to take effect at their decease. He evidently attempted to establish a trust to insure the preservation of the corpus of the estate unimpaired during their lives, but at the same time desired to give them substantially the same dominion and control over the property that they would have had if no attempt had been made to create a trust. The plaintiff's bill, as well as the testator's codicil, is silent respecting the nature and value of the estate, the situation and circumstances of the parties, what had transpired in the conduct or social relations of the legatees during the two months which intervened between the will and the codicil, and the particular consideration which in fact induced the testator to attempt to modify

the terms of the original will which in plain terms gave the daughters an absolute title to the property. There is nothing in the will or codicil indicating any other thought or feeling than an affectionate regard for the welfare and happiness of his children, and a desire to secure to them a permanent support which should not be exposed to the risks of their own possible improvidence and the consequent demands of creditors or the importunities of others. It is not improbable that the testator had in mind the idea of giving them only a qualified estate which they could not alienate and which creditors could not reach. It would have been competent for him to create a trust which would have accomplished that purpose. The doctrine of "spendthrift trusts" has been distinctly approved by this court in *Roberts* v. *Stevens*, 84 Maine, 325. But an intention to create a "spendthrift trust" has not been unequivocally expressed by the testator, nor is it necessarily or clearly to be inferred from the language of the will and codicil construed together. There is no explicit provision that either the income or the estate shall not be alienable by the voluntary act of the daughters or be subject to attachment by their creditors. If the testator intended to create a spendthrift trust, he did not succeed in framing a will to carry out that intention. The property is "bequeathed" to his daughters as trustees, with power to change the investments and to pay over to themselves all of the income of the property. True, the gift of the income of real or personal property for life is a gift of a life estate in that property. So the codicil in this case purports to give the daughters an estate for life in the entire property, followed by a general power of appointment or right to make a disposition of the estate, if they see fit to exercise it, by will or other instrument which shall take effect at their decease. But no other beneficiaries except the daughters are named or suggested. After providing for this life estate to the daughters, the will contains no reference whatever to any limitation over of the estate in any contingency to any other person. True, the entire estate is "bequeathed" to the trustees to "remain in their care during their lifetime" for the purpose and with the power above stated, but the testator makes no disposition of the remainder after the termination of this life estate.

The daughters thus hold the property upon a simple trust for their own benefit. Under these circumstances, even if the trust had been confided to strangers for their benefit, the daughters would thereby have become the absolute equitable owners, not only of the income but of the principal of the trust estate. In *Sears* v. *Choate*, 146 Mass. 395, the testator left the residue of his estate to trustees "to hold, invest, manage and take care of the same according to their best knowledge and discretion" and made the following provision for his son Joshua, his only child and sole heir: "I give to my son Joshua M. Sears the sum of $3000 to be paid to him at the age of twenty-one years. All such parts of the income of my estate which may be necessary for the support and education of my son, I order to be used for that purpose, and when he shall be twenty-one years old, I direct that $4000 be paid to him annually; when he shall be twenty-five years old $6000 per year, and $10,000 per year when he shall be thirty years old." The son brought a bill in equity alleging that he had the entire beneficial interest both in the income of the property held by the trustees for his benefit, and in the property itself, and praying that the trust might be terminated and the property conveyed to him. In the opinion the court say: "The trustees now hold the trust estate upon the simple trust, as defined in the will, to pay the plaintiff $10.000 per year. There is in the will no limitation over of the estate in any contingency to any other person . . . . and there is no provision that the income of the estate shall not be alienable by the plaintiff, or attachable by his creditors. It cannot be doubted that under this will the plaintiff took an equit-. able estate which he might alienate, and which equity would apply to the payment of his debts. . . . Taking this will as it is, we should not be justified in holding that the plaintiff took anything else than an absolute equitable estate both in the income and the corpus of the trust."

"There is no doubt of the power and duty of the court to decree the termination of a trust, where all the objects and purposes have been accomplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. Where property is given to certain persons for their benefit and in such a

manner that no other person has or can have any interest in it, they are in effect the absolute owners of it, and it is reasonable and just that they should have the control and disposal of it unless some good cause appears to the contrary." See also *Dodson* v. *Ball,* 60 Pa. St. 492, (S. C. 100 Am. Dec. 586); *Burleigh* v. *Clough,* 52 N. H. 267; *Irwin* v. *Farrer,* 19 Ves. 86; *Barford* v. *Street,* 16 Ves. 135; *Holloway* v. *Clarkson,* 2 Hare, 521; *Conrad* v. *Reynolds,* N. J. Er. & Ap. 1901, 49 Atl. Rep. 541.

In *Dodson* v. *Ball,* 60 Pa. St. supra, the purpose of the trust was substantially the same as that in the case at bar, and apart from the identity of trustees and beneficiaries, the facts were also analogous to those in the principal case. In the opinion the court say: "The only useful purpose visible in the deed (of trust) was the preservation of her property to her sole use   .   .   .   and its transmission by will or descent.   .   .   .   .   The trust is purely passive requiring no active duty except conversion for her benefit and advantage; and if the trust as expressed does not in fact break the course of descent, there seems to be no good reason to interpret it so as to divest her of her control of her own property, and the trust should fall."

In regard to the utility and necessity of merely passive trusts where the trustee is a simple depositary of title, this court has said in *Sawyer* v. *Skowhegan,* 57 Maine, 500: "They tend to obscure titles, mislead the public and facilitate fraud, and it was the object of the statute of uses to abolish them. Hence, we find the courts discouraging them.   .   .   .   They are not useful."

It is accordingly the opinion of the court that upon an amendment to the prayer of the present bill asking that the alleged trust in this case be declared terminated, no sufficient cause is shown why the plaintiff will not be entitled to a decree of the court to that effect. The bill should also be further amended by adding a distinct allegation that these parties are the only heirs of the testator.

> *Cause remanded for further proceedings, in accordance with this opinion.*