SECURITY TRUST AND SAFE DEPOSIT COMPANY, Trustee for James Whilldin Ware McClymont,

*vs.*

ISAAC S. MARTIN and JAMES WHILLDIN WARE MCCLYMONT.

*New Castle, July* 28, 1914.

Under a will giving property to trustee to pay the income to the testator's grandson for life, and to expend any portion of the principal for his maintenance and education during his minority as the trustee might in his judgment deem best, with no restraint on the alienation by the beneficiary of his right to the income, nor direction to pay the income only to him, nor authorization to the trustee to withhold any part of the income, nor any circumstance showing that the trust was a spendthrift trust, the beneficiary, after attaining his majority, could assign his right to the income, and, having assigned it as security for the repayment of money borrowed by him, the trustee should pay the income to the assignee, especially where no unfairness was suggested, and the beneficiary was asking that the income be paid to the assignee.

Bill by Trustee for Instructions.  Margaret Ware, by Item 4 of her will, dated July 1, 1904, gave the residue of her estate to a trustee for the following purposes:

"In trust, however, for the use, benefit and behoof of my grandson, James Whilldin Ware McClymont, to pay the said James Whilldin Ware McClymont for and during his natural life the clear yearly income after all expenses are paid, of any real estate I may die seized of, or the interest on any sum of money that I may die seized, which sum of money I hereby order my trustee as aforesaid to invest in such manner as he in his judgment may deem best; and to expend any portion of the principal of the said estate or trust fund for the maintenance and education of the said James Whilldin Ware McClymont during his minority as the said Gordon Chambers, trustee, as aforesaid may in his judgment deem best.    *    *    *"

At the date of the will the beneficiary was fourteen years of age.  He survived the testatrix, who died September 27, 1908. On January 15, 1913, more than a year after he obtained his majority, McClymont, to secure repayment of a loan of money made that day to him by Isaac S. Martin, executed an absolute assignment of all interest which the assignor had in the trust estate, and notice thereof was given to the trustee.  The trustee asks to be instructed as to whom payment of the income is to be made.  A joint answer was filed by McClymont, the assignor, and Martin, the assignee, setting up the voluntary transfer, and asking that the net income be paid to Martin, in accordance with the assignment, or until it be canceled by Martin.

The case was heard by agreement on bill and answer, and on certain exhibits as evidence.

*Benjamin Nields*, for the complainant.

*Guy W. Gordon*, of New York City, for the defendants.

THE CHANCELLOR.    The question raised in this case is a simple one, and has been settled by decisions in this State and elsewhere.    Property was given by will in trust to pay the clear yearly income to a grandson of the testatrix for life, and with power in the trustee to expend for the maintenance and education of the grandson during his minority such portion of the principal as the trustee should in his judgment deem best. At the date of the will the grandson was a minor, and about one and one-half years after attaining his majority he assigned his interest in the income as security for money which he borrowed and gave a power of attorney to his creditor to collect from the trustee the income until the debt should be paid.    Both the *cestui que trust* and his assignee by their joint answer ask that the trustee carry out the bargain.    There is no suggestion of unfairness in the arrangement.    The trustee says through its counsel that the interest is not alienable.

It is clear that there is an active trust, and the beneficiary has no right, title or interest, except to receive the income for life.    There is in the will no restraint on the alienation by the beneficiary of his right to the income during his life.    Neither is there a condition, or other limitation, or even a qualification, directly or indirectly stated or inferable, which would hamper the right of the beneficiary to do with his own as he pleases. There is no direction to pay the income into the hands of the beneficiary only; or a discretion or power in the trustee to withhold from him any part of the net income; or any circumstance whatever, in or out of the will, to show that it was what is called a spendthrift trust.    Neither is it a trust for the maintenance and support only or a trust for maintenance of a person not *sui juris*, or a trust for a married woman.    There is no occasion to consider in this case whether the interest of the beneficiary could be reached in this case by his creditors without an assignment by him.

The sole and simple question, then, is whether the beneficiary of a trust created to pay net income to him for his life,

with a gift of the principal to others in remainder, may volun-
tarily assign his interest as security for the repayment of money
borrowed by him.   Text-book writers and courts have always
and everywhere recognized that such an interest is alienable.
Loring in his valuable work, "*A Trustee's Handbook*," states
it thus on page 133:

"In the absence of restraint by the terms of the settlement or
statute, the beneficial estate may be alienated as freely as any other
property."   See, also, 1 *Perry on Trusts*, §386a, and 2 *Perry on Trusts*,
§827a.

In this State this general principle has been repeatedly
recognized.   In the case of *Newell v. Morgan*, 2 *Harr*. 225, 230,
the Court of Errors and Appeals said:

"The general principle in equity is, that a *cestui que trust* has, in
most respects, the same power over the trust estate, as owners of legal
estates are possessed of; and the trust estate is in general liable in the
same manner as a legal estate, except in respect of dower.   *   *   *   The
*cestui que trust* may alien it, and any legal conveyance or assurance by
him has the same effect and operation upon the trust as it would have
had at law upon the legal estate."

A trust for the general benefit of a person *sui juris*, and
not limited to maintenance only, vests in the beneficiary an
interest transmissible through him and so would be assignable
by him.   *Gray v. Corbit*, 4 *Del. Ch*. 135.   In general, all vested
interests are transferable by the person entitled thereto.   *Kean's
Lessee v. Hoffecker*, 2 *Harr*. 103, 112, 29 *Am. Dec*. 336; *In re
Nelson's Estate*, 9 *Del. Ch*. 1, 22, 74 *Atl*. 851; *In re Twaddell*,
110 *Fed*. 145 (U. S. District Court for Delaware).   There are
other citations which could be made to support the same propo-
sitions.   Indeed, there is no case, or even a *dictum*, which has
been cited, or found, to hold the contrary.   A consideration of
all the cases cited by counsel for the trustee shows that not one
of them holds that a pure and simple equitable life estate, such
as this one, is not assignable by the voluntary act of the bene-
ficiary.   Beyond question, then, the assignment made by
McClymont to Martin was valid, and unless or until the debt
is paid, the assignee is entitled to have from the trustee the net

income of the trust estate, which would otherwise have been paid to McClymont.   The costs should be put on the complainant.