RHODA E. JONES, also known as RHODIE E. JONES,

*vs.*

HARLEY R. BODLEY, Executor of the Estate of WILLIAM FORTNER, deceased.

*New Castle, June 24, 1942.*

*Philip Cohen,* for complainant.

*William Prickett,* for defendant.

THE CHANCELLOR: This case is before the court on a motion of the complainant for a decree notwithstanding the defendant's amended answer to her bill. A bond for $3500.00 and the accompanying mortgage to secure that debt, both dated October 8th, 1935, were executed by Royden Caulk and delivered to William Fortner, who was the obligee and mortgagee named in those instruments. The mortgage was

subsequently recorded in the proper office in New Castle County; apparently the bond was not entered. Some days later, William Fortner executed the following written instrument, under seal, and delivered it to the complainant:

"Blackbird, Del. October 16th 1935
"To Whom It May Concern:
"This is to certify that the money invested in the Royden Caulk bond and mortgage for Thirty-five Hundred Dollars ($3,500.00) belonged to Miss Rhodie E. Jones of Appoquinimink Hundred and in the event of my death this bond and mortgage is to be turned over to her by my executor if I have not done so previously.
"Witness by hand and seal this sixteenth day of October, A. D. 1935.
"Wm. Fortner    (Seal)
"Witness:
"W. W. Hynpon (sic)"

The real purpose and effect of that instrument is the question to be determined; whether it is a declaration of trust or an incomplete gift, which a court of equity will not enforce.

William Fortner died July 21st, 1940, without having assigned and delivered the Caulk bond and mortgage to Miss Jones; nor have they been assigned and delivered to her by his executor.

The amended answer alleges on information and belief that the money invested in the bond and mortgage did not belong to the complainant but, on the contrary, was the property of Fortner. It likewise alleges that during Fortner's lifetime he "took all payments of interest on said bond and mortgage for his own use * * *." All well pleaded allegations of the answer are, necessarily, admitted by the complainant's motion (*Jones v. Maxwell Motor Co.,* 13 *Del. Ch.* 7679, 115 *A.* 312) ; but, as it does not appear that any interest whatever was collected by Fortner, that allegation is unimportant. Conceding that the money invested in the Caulk bond and mortgage originally belonged to Fortner, that is likewise unimportant. The complainant does not rely on a resulting trust. The question is whether Fortner

intended to declare himself a trustee of that fund for the benefit of Miss Jones.

The owner of money, or other property, may make himself a trustee for the benefit of some specified person by an unequivocal and gratuitous declaration, indicating such an intent; thereafter, he becomes the mere legal owner of such property, while all equitable rights are immediately vested in the person intended to be benefited thereby. *Ex parte Pye*, 18 *Ves.* 140, 34 *Eng. Rep.* 271; *Becker v. St. Louis Union Trust Co.*, 296 *U. S.* 48, 56 *S. Ct.* 78, 80 *L. Ed.* 35; *Janes v. Falk*, 50 *N. J. Eq.* 468, 26 *A.* 138, 35 *Am. St. Rep.* 783; *Smith's Estate*, 144 *Pa.* 428, 22 *A.* 916, 27 *Am. St. Rep.* 641; *Robson v. Robson's Adm'r.*, 3 *Del. Ch.* 51; *Scott on Trusts*, §§ 17, 17.1; 3 *Pomeroy, Eq. Jur.*, (*5th Ed.*) 966.

When the intent to create a trust in that manner is apparent, no further action by any one is required. *Id.* That has been the law since the days of Lord Eldon. *Ex parte Pye, supra.* In such cases, in view of the declarant's evident intent to retain the legal title, though for the benefit of another, the immediate delivery of the subject matter of the trust to the beneficiary is neither necessary nor appropriate. *Scott on Trusts*, § 32.5; 29 *R. C. L.* 1192. The use of formal and technical words is not essential to a valid declaration of trust, though they are always of great importance in determining the real intent of the declarant. *Janes v. Falk*, 50 *N. J. Eq.* 468, 26 *A.* 138, 35 *Am. St. Rep.* 783; *Smith's Estate*, 144 *Pa.* 428, 22 *A.* 916, 27 *Am. St. Rep.* 641; *Scott on Trusts*, § 24; see also, *Delaware Land & Develop. Co. v. First and Central Presby. Church*, 16 *Del. Ch.* 410, 147 *A.* 165. While no particular words are necessary, the intent of the owner of property to declare himself a trustee for another "must be properly manifested" by the language used. *Smith's Estate, supra; Scott on Trusts*, § 23. The question is always whether the declarant manifested an intent to impose upon himself equitable duties to deal with the property for the benefit of another person.

*Scott on Trusts,* § 24. When, however, such an intent is apparent, "the effect is no different than if the trustee had been another person." *Becker v. St. Louis Union Trust Co., supra* [296 *U. S.* 48, 56 *S. Ct.* 79, 80 *L. Ed.* 35]. While a valid declaration of trust, therefore, operates as a present and complete gift, an attempted, but imperfect, gift in some other manner cannot be upheld on that theory. *Robson v. Robson's Adm'r., supra; Scott on Trusts,* § 32. If an absolute legal gift were intended, the owner could not have meant to retain the property in trust. See *Richards v. Delbridge, L. R.* 18 *Eq.* 11. The defendant contends that the written instrument dated October 16th, 1935, and signed by Fortner, is nothing more than an imperfect gift; and that the latter principle applies. But it seems apparent that Fortner intended to declare a trust for the benefit of Miss Jones. Because of the informal language used, perhaps we may safely assume that the alleged declaration of trust was drawn by a layman. It did not contain the word "trust" or "trustee", or, in so many words, declare that Fortner held the $3500.00, invested in the Royden Caulk bond and mortgage, for the use and benefit of Miss Jones; but that is what he meant to declare. With some degree of formality, he certified that the money so invested "belonged" to her; was her property —was owned by her. That is the real primary meaning of the word "belong", as used here. *People v. Lake Forest Univ.,* 367 *Ill.* 103, 10 *N. E.* 2d 667; *Commonwealth v. Hamilton,* 15 *Gray.* 480, 81 *Mass.* 480; *In re Assessment of Property of Northwestern Univ.,* 206 *Ill.* 64, 69 *N. E.* 75; 10 *C. J. S., Belong, p.* 241.

As an added indication of Fortner's intent to create a trust, and to further protect the rights thereby given Miss Jones, he declared "and in the event of my death" the bond and mortgage in which the fund was invested "is to be turned over to her by my executor if I have not done so previously."

Conceding that the money so invested was originally the property of Fortner, as is alleged in the answer, the fair and reasonable inference to be drawn from the language used is that he intended to declare himself a trustee for the benefit of Miss Jones. See *In re Brown's Will,* 252 *N. Y.* 366, 169 *N. E.* 612; *Bingen, et ux., v. First Trust Co., etc.,* (8 *Cir.*) 103 *F.* 2d 260. In declarations of that nature, the fund necessarily belongs to the declarant. Moreover, it was not the money that was to be turned over to Miss Jones, if Fortner should fail to do so during his lifetime, but the securities in which it was invested. The transaction was neither an incomplete gift nor an attempted testamentary disposition of a fund in a manner that did not comply with the formalities of the statute relating to the execution of wills. *Scott on Trusts,* § 23. While not necessary to the validity of a declaration of trust (*Scott on Trusts,* §§ 24.2, 32.5, 36; see also *Morsman v. Comm. of Inter. Rev.,* (8 *Cir.*) 90 *F.* 2d 18, 113 *A. L. R.* 441), the fact that Fortner gave Miss Jones the paper, signed by him, at or about the time it was executed has some bearing on his intent to vest immediate rights in her. If he had collected the interest due on the Caulk bond and mortgage from time to time, and had at all times used it for his own purposes, under some circumstances, perhaps that might be a pertinent fact to be considered, though it was subsequent to the declaration made. *Elliott v. Gordon,* (10 *Cir.*) 70 *F.* 2d 9. The language of the alleged declaration is sufficiently ambiguous to permit of the application of the general rule as to the use of surrounding circumstances, in appropriate cases, to aid in determining the intent (see *Scott on Trusts,* §§ 24, 38); but even if the fact intended to be relied on by the defendant were clearly alleged in his answer, standing alone it would not affect the conclusion that a trust was intended.

A decree will be entered in favor of the complainant, pursuant to the prayers of her bill.

Note—The defendant was subsequently permitted to

further amend his amended answer by specifically alleging, though on information and belief:

1. That the interest accruing on the Caulk bond and mortgage was regularly collected by Fortner during his lifetime, and was, at all times, received and used by him for his own purposes and benefit.

2. That from the date of the execution of the Caulk bond and mortgage until the death of William Fortner, on July 21st, 1940, "no demand was made by the complainant for the payment to her of interest which accrued on said bond and mortgage during said period."

THE CHANCELLOR: The amended answer does not affect the conclusion reached in the opinion filed that Fortner intended to declare a trust.

Note: The decree entered, in accordance with the foregoing opinion was affirmed on appeal and will appear in a later volume of Delaware Chancery Reports. See 59 *A.* 2*d* 463.